566 F.2d 381
 Edward FARRELL, Petitioner-Appellant,
v.
Jack CZARNETZKY, Superintendent, Eastern Correctional
Facility, Respondent-Appellee.
Chauncey REIDOUT, Petitioner-Appellee,
v.
Robert HENDERSON, Superintendent, Auburn Correctional
Facility, Respondent-Appellant.
 Nos. 546, 664, Dockets 76-2131, 76-2144.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 4, 1977.
Decided Sept. 30, 1977.
 
 Barry Bassis, New York City (William E. Hellerstein and William J. Gallagher, New York City, on the brief), for petitioner-appellant Farrell.
 Lynn W. L. Fahey, New York City (William E. Hellerstein and William J. Gallagher, New York City, on the brief), for petitioner-appellee Reidout.
 Kevin J. McKay, New York City (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City), for respondents.
 Before MOORE, OAKES and TIMBERS, Circuit Judges.
 PER CURIAM:
 
 
 1
 After the argument of the instant consolidated appeals, the Supreme Court heard and decided Patterson v. New York, 432 U.S. 197 (1977). We hold that Patterson controls our decision here.
 
 
 2
 The appeals before us are from judgments entered in the Southern District of New York on state prisoners' petitions for writs of habeas corpus (1) denying Farrell's petition in No. 76-2131, Charles M. Metzner, District Judge, and (2) granting Reidout's petition in No. 76-2144, Marvin E. Frankel, District Judge.
 
 
 3
 Under attack on the instant appeals is New York's first degree robbery statute, N.Y. Penal Law § 160.15(4) (McKinney 1975), which permits a defendant who, in the course of a robbery, "(d)isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" to raise as "an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged." If he does not sustain his burden of proving the affirmative defense by a preponderance of the evidence, the defendant can be convicted of first degree robbery. If he does sustain the burden, he will be convicted of second degree robbery. N.Y. Penal Law § 160.10(2)(b) (McKinney 1975). By placing the burden of proving the affirmative defense on a defendant, New York was said, prior to the Supreme Court's decision in Patterson, to have contravened the due process clause of the Fourteenth Amendment as interpreted in Mullaney v. Wilbur, 421 U.S. 684 (1975).
 
 
 4
 The Supreme Court in Patterson, however, restricted Mullaney by holding that a state, without violating the Constitution, may place on a defendant the burden of proving by a preponderance of the evidence a matter not defined by the legislature as a necessary ingredient of the crime but which mitigates the degree of the offense. Under the New York first degree robbery statute, possession of a weapon actually capable of causing death is not a necessary ingredient of the offense, since the prosecutor is not required to prove the presence of such a factor in order for a defendant to be convicted of first degree robbery. Moreover, proof that the gun was not capable of causing death does not entirely exonerate the defendant of criminal liability.
 
 
 5
 We hold that under Patterson the New York first degree robbery statute is constitutional.
 
 
 6
 Affirmed as to the denial of the Farrell petition (No. 76-2131); reversed as to the grant of the Reidout petition (No. 76-2144).
 
 OAKES, Circuit Judge (concurring):
 
 7
 I join in the judgment of the court, but for somewhat different reasons.
 
 
 8
 In Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court held unconstitutional Maine's allocation of the persuasion burden to murder defendants on the mitigating circumstance of action "in the heat of passion on sudden provocation." Id. at 684-85, quoting Me.Rev.Stat.Ann., Tit. 17, § 2551 (1964). In Patterson v. State of New York, --- U.S. ----, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the Court upheld New York's allocation of the persuasion burden to murder defendants on the mitigating circumstance of action "under the influence of extreme emotional disturbance." Id., quoting N.Y. Penal Law § 125.20(2) (McKinney 1975). Mr. Justice Powell, who wrote Mullaney, dissented in Patterson. He criticized the purported distinction between the two cases as purely "formalistic." Id. at ----, ----, 97 S.Ct. 2319. Unlike the Maine statute,[1] the New York legislature denoted the mitigating factor as an affirmative defense without mentioning either the presence or absence of the factor in the core definition of the crime.[2]
 
 
 9
 Farrell and Reidout question the constitutionality of New York's robbery statute to the extent that it requires a defendant to prove that his firearm was unloaded. If he can prove that it was, then his crime is mitigated from first to second degree robbery.[3] With all due respect, the Patterson decision, and its failure to overrule Mullaney, see --- U.S. at ---- - ----, 97 S.Ct. 2319, raises as many questions as it answers.
 
 
 10
 First, it could be argued that the statute effects a shift of the persuasion burden on an element of the crime. Because a defendant may be convicted of first degree robbery when, inter alia, he "(d)isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm," N.Y. Penal Law § 160.15(4) (McKinney 1975) (emphasis added), the core definition of the crime does not require that the weapon be loaded. It need only "appear" to be such. The operative effect of the statute, however, is to create a presumption that the weapon is loaded. The defendant must rebut that presumption or stand convicted of first degree robbery. If the defendant's rebuttal fails, he stands convicted of a crime under the statute which, even though drafted not to require that the weapon be loaded, in fact so operates. Otherwise, it would make no sense to differentiate first from second degree robbery on the basis of whether a weapon is loaded. Because the defendant must prove the negative of the first degree robbery statute's operative effect, this case arguably resembles that aspect of Mullaney which condemned the shift of the persuasion burden on the factor of heat of passion on sudden provocation.[4]
 
 
 11
 Patterson might also be viewed as suggesting that the only factors significant enough to require the prosecution to shoulder the burden of proving are those which are part of the core definition of the crime and which are therefore determinative of guilt. Thus, if the negative of one such factor were required to be proved by the defendant, presumably even under Patterson's strictures, a due process violation could be found. Under that view, this case could be disposed of as merely presenting a difference between degrees of crime and not between guilt or innocence.[5] That is what the majority opinion here suggests, I presume, when it concludes that "proof that the gun was not capable of causing death does not entirely exonerate the defendant of criminal liability." Ante at 6156. Of course, proof of acting in the heat of passion in Mullaney did not entirely exonerate the defendant there of criminal liability; it only reduced his crime from murder to manslaughter.
 
 
 12
 Ultimately, it may be that the Patterson Court opted for a highly "formalistic" approach, as the dissenting opinion suggests, --- U.S. at ----, ----, 97 S.Ct. 2319, thereby leaving lower court judges without "a conceptual framework," id. at ----, 97 S.Ct. 2319 for distinguishing Mullaney shifts from Patterson shifts. In any event, Mullaney, while not expressly overruled, has been drained "of much of its vitality," id. at ----, 97 S.Ct. 2319, and for present purposes perhaps all.
 
 
 13
 I come then to the same result as my brethren, only in a somewhat less inexorable, slightly more perplexed way. I suppose that I am left with the proposition after Patterson that if a legislature includes in the definition of a crime a significant factor whose negative may be proved by the defendant as an affirmative defense, and the affirmative defense has been one of historical significance "in the Anglo-American legal tradition," id. --- U.S. at ----, 97 S.Ct. at 2335, and the crime is historically and conceptually separate in kind, as opposed to degree, from the crime if the affirmative defense were proven, there may still be a due process violation where the burden of proof has shifted to the defendant. Under this proposition, however, appellant Farrell and appellee Reidout both lose.
 
 
 14
 I therefore concur in the judgment.
 
 
 
 [1]
 Maine law defined murder as the unlawful killing of a human being "with malice aforethought," Me.Rev.Stat.Ann., Tit. 17, § 2651 (1964), and manslaughter as an unlawful killing "in the heat of passion, on sudden provocation, without express or implied malice aforethought." Id. § 2551. The effect of the Maine statute, as interpreted by the Maine Supreme Judicial Court, was to shift the burden of persuasion to the defendant to disprove malice aforethought for the purpose of mitigating his crime. Mullaney found this shift of the burden to violate the due process standards of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). See 421 U.S. at 696-704, 95 S.Ct. 188
 
 
 [2]
 The Patterson majority's definitional compartmentalization of elements of the crime from mitigating factors was thought to be formalistic by Mr. Justice Powell, because as he pointed out the Maine Supreme Judicial Court had held that malice was not an independent element of the crime of murder in Maine. --- U.S. at ---- & n.4, ---- & n.7, 97 S.Ct. 2319. The state had so held even though the language of malice appeared in the definition of crime
 
 
 [3]
 N.Y. Penal Law § 160.15(4). The statute states in pertinent part:
 A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
 Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.
 
 
 [4]
 This is not to suggest that Farrell and Reidout have fully satisfied what were thought to be the due process requirements of Mullaney. Mr. Justice Powell's Patterson dissent pointed out that the mitigating defense here involved was a "(n)ew ameliorative affirmative defense" which "need not (have been) disturbed" even if Patterson had followed Mullaney more enthusiastically. --- U.S. at ----, 97 S.Ct. 2319. The very statute here at issue was his first example of such a "(n)ew ameliorative affirmative defense." Id. at n.14. Thus, this case would not satisfy the Mullaney test, not because it met Patterson's formalistic requirements, but because the distinguishing feature of first from second degree robbery whether the gun was loaded does not have the same historical significance in the common law definition of robbery as had the "malice aforethought" language at issue in Mullaney. See id. at ----, 97 S.Ct. 2319
 
 
 [5]
 Mullaney would then have to be looked at as involving two separate crimes, murder and manslaughter, rather than decrees of homicide. For the conceptual difficulties involved in this analysis, see the discussion in United States ex rel. Jackson v. Follette, 462 F.2d 1041 (2d Cir.) (double jeopardy context), cert. denied, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 496 (1972)