**Javier QUINONES**

v.

**Larry R. MEACHUM, Commissioner, Department of Corrections.**

**Civ. No. H–90–864 (AHN).**

United States District Court, D. Connecticut.

Dec. 6, 1991.

Philip Russell, Ivey, Barnum & O'Mara, Greenwich, CT, for plaintiff.

Julia DiCocco Dewey, Asst. State's Atty., Wallingford, CT, for defendant.

NEVAS, District Judge.

After review and over objection, the Magistrate's Recommended Ruling is approved, adopted and ratified. SO ORDERED.

## RECOMMENDED RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

MARGOLIS, United States Magistrate Judge.

On October 15, 1990, petitioner Javier Quinones, a state prisoner, through his counsel, filed a four-count petition for writ of habeas corpus, with an accompanying brief.[1] In accordance with a scheduling order set on March 11, 1991 (Dkt. # 13), on March 19, 1991 respondent filed his answer (Dkt. # 14), to which petitioner's state court record was attached.[2] In his petition, the petitioner claims the trial court erred: (1) by consolidating the two informations and jointly trying the charged offenses, (2) by failing to accept evidence of his drug-dependency in denying his motion for a new trial and at sentencing, and (3) by permitting the prosecution to cross-examine him about his financial condition and the source of his bail money.

On April 10, 1990, respondent filed his motion for summary judgment, brief in support, and Local Rule 9(c) Statement. (Dkt. ## 15–17). On May 28, 1991, petitioner filed a cross-motion for summary judgment, and brief in support of his motion and in opposition to respondent's motion.[3] (Dkt. ## 19–20). Oral argument was held on these two motions on September 5, 1991.

For the reasons stated herein, respondent's motion for summary judgment is granted, and the petitioner's motion for summary judgment is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was charged with two counts of possession of narcotics with intent to sell by a non-drug dependent person, in violation of Conn.Gen.Stat. § 21a–278(b).[4]

---

1. The first count, which dealt with search and seizure issues, was dismissed by this Magistrate Judge in a recommended ruling, filed February 27, 1991 (Dkt. # 11), which decision was approved by Judge Nevas over petitioner's objection on March 28, 1991.

2. The state court record contained the following documents: the 325–page transcript of petitioner's trial in the Connecticut Superior Court on April 4, 5, 7 and 10, 1989, *State v. Quinones,* Dkt. Nos. 54521 & 54408 ["Trial Tr."]; the 28–page transcript of the jury charge and jury verdict on April 10, 1989 ["Charge Tr."]; the 39–page transcript of his sentencing on May 25, 1989 ["Sentencing Tr."]; petitioner's appellate brief to the Connecticut Appellate Court, filed August 26, 1989, *State v. Quinones,* App. No. 8162, with twelve attachments ["Petitioner's Appeal Brief"]; the State's appellate brief, filed November 3, 1989, with five attachments ["State's Appeal Brief"]; and the Appellate Court Record, filed October 12, 1989, containing thirteen documents ["Appellate Court Record"].

3. Petitioner's six-and-one-half-page brief largely incorporated by reference the brief which was filed with the petition.

4. Section 21a–278(b) provides in pertinent part:

Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance ..., and who is not at

(State's Appellate Brief, at C–1 to C–2; Appellate Court Record, at 3–4). The State's motion for consolidation of the two charges ·was granted on March 29, 1989 and petitioner's motion for severance was denied on March 31, 1989. (Petitioner's Appellate Brief, Exhs. 6–7; State's Appellate Brief, at E–1 to E–3; State Appellate Record, at 5–7). On April 10, 1989, petitioner was convicted by a jury on both charges following a four-day trial held before Superior Court Judge Mary R. Hennessey. (Charge Tr. at 20–22). On May 25, 1989, petitioner filed a motion for a new trial, which was heard and denied by Judge Hennessey that day. (Petitioner's Appeal Brief, Exhs. 11–12; Appellate Court Record, at 8; Sentencing Tr. at 2–5). On May 25, 1989 he was sentenced to two terms of imprisonment of five and ten years, to be served concurrently. (Sentencing Tr. at 31–32; Petitioner's Appellate Brief, Exhs. 9–10; Appellate Court Record, at 12–13). On May 15, 1990, the Connecticut Appellate Court affirmed petitioner's conviction. *State v. Quinones*, 21 Conn.App. 506, 574 A.2d 1308 (1990). The Connecticut Supreme Court denied certification on June 21, 1990. 215 Conn. 816, 576 A.2d 546 (1990).

The facts underlying petitioner's conviction, as summarized by the Connecticut Appellate Court,[5] are as follows: As to the first information, on May 24, 1988, two officers of the narcotics division of the Hartford Police Department were conducting general surveillance of an apartment complex on Annawan Street in Hartford, an area notorious for its constant drug activity. The officers observed a transaction between several individuals and petitioner. The individuals handed petitioner money, whereafter petitioner handed them each a plastic bag. Petitioner fled as the officers approached, but he was quickly apprehended and arrested. The officers recovered twelve packets containing heroin, each of which was stamped with the word "Terrific." The officers also recovered $580 in cash from petitioner's pocket. Petitioner was released on bond. 21 Conn.App. at 508, 574 A.2d 1308.

The facts relating to the second incident are as follows: On May 26, 1988, a member of the Narcotics Unit of the Hartford Police Department, received a tip from a reliable informant that petitioner would arrive at the Annawan Street housing project in a yellow Mazda with 1500 bags of heroin the next evening. Based on this information, this detective and a second detective went to the housing project the next evening, where they observed petitioner seated in the driver's seat of a parked yellow Mazda, with a companion, Elias Cruz, in the front passenger seat. Petitioner and Cruz exited the car. The officers observed petitioner go around to the passenger side and remove a brown paper bag from under the front seat. Petitioner took out three clear plastic bags that contained additional plastic packets. He gave one bag to Cruz, and retained two for himself. Petitioner replaced the brown bag under the car's front seat, locked the car door, and placed the key in his pocket. He then walked into one of the apartment buildings. Cruz entered the same building after selling some of the bags to individuals outside the apartment complex.

The officers secured the yellow Mazda by blocking it with a police vehicle. After one-and-a-half hours, petitioner and Cruz exited the building, and were arrested. One of the officers removed the car key from petitioner's pocket, opened the door to the yellow Mazda, and removed the paper bag from under the front seat. The bag contained nearly 1200 small heat sealed plastic packets, all stamped with the word "Terrific." The state toxicology laboratory identified the substance in the bags as her-

the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years ...

5. The state appellate court's findings of fact are accorded a presumption of correctness. *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); *Sumner v. Mata*, 449 U.S. 539, 544–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Gonzalez v. Meachum*, Civ. No. N88–149 (EBB) (D.Conn. Mar. 31, 1989), slip op. at 2; *Biller v. Lopes*, 655 F.Supp. 292, 297 (D.Conn.), aff'd on other grounds, 834 F.2d 41 (2d Cir. 1987).

oin. The officers estimated that the street value of the heroin was approximately $20,-000 to $30,000. Petitioner was released several days later on bond. *Id.* at 508–09, 574 A.2d 1308.

## II. DISCUSSION

### A. JOINDER OF OFFENSES

In their briefs, both respondent and petitioner argue whether the trial judge correctly applied the prevailing Connecticut law in having granted the State's motion for consolidation of the two offenses and in having denied petitioner's motion for severance thereof. As the Fifth Circuit observed in *Manning v. Warden, Louisiana State Penitentiary,* 786 F.2d 710, 711 (5th Cir.1986), in an identical context, both parties "miss the point when they argue about [state] law." As that same court ruled fifteen years ago in *Tribbett v. Wainwright,* 540 F.2d 840, 841 (5th Cir.1976) (*per curiam* ), *cert. denied,* 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587 (1977), a habeas action with respect to a state prisoner's conviction following a simultaneous trial for both robbery and assault with intent to rape:

> The propriety of a consolidation rests within the sound discretion of the state trial judge. The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate.

As the Fifth Circuit found that "there was no indication that the fact finding process was impermissibly tainted at petitioner's state trial by the consolidation of these charges," his habeas petition was denied. *Id.*

 Under this standard, the federal district court looks *not* at compliance with state law, but whether federal constitutional due process requirements have been satisfied. *See, e.g., Leach v. Kolb,* 911 F.2d 1249, 1258 (7th Cir.), *cert. denied sub nom. Leach v. McCaughtry,* 498 U.S. 972, 111 S.Ct. 441, 112 L.Ed.2d 424 (1990) ("[I]mproper joinder [of offenses] does not, in itself, violate the Constitution. Rather,

misjoinder ... rise[s] to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his ... right to a fair trial.") (citation omitted); *Manning, supra,* 786 F.2d at 711–12 ("When there has been a violation of state procedure [with respect to joinder of offenses], the proper inquiry is to determine whether there has been a constitutional infraction of defendant's due process rights which would render the trial as a whole fundamentally unfair.") (citations omitted); *Aponte v. Scully,* 740 F.Supp. 153, 156 (E.D.N.Y.1990) ("To succeed on a claim for a federal writ of habeas corpus, petitioner must show that the joint trial [on more than one offense] was so prejudicial as to actually render petitioner's state trial fundamentally unfair and hence, violative of due process.") (citations omitted).

None of the petitioners was successful in any of these cases. The *Leach* decision, issued last summer, is particularly instructive, where defendant was simultaneously tried for four separate offenses committed within a one-month period, including attempted murder, two unrelated charges of armed robbery, and lastly attempted armed robbery. The Seventh Circuit held that petitioner had not been deprived of his federal constitutional right to a fair trial, as the evidence against him was overwhelming and the trial judge gave a "clear, unambiguous and limiting instruction" that each count was to be considered separately and that petitioner's guilt or innocence on any one of the crimes was not to affect their verdict on any other crime charged. 911 F.2d at 1258–60.

 The same is essentially true here, where Judge Hennessey gave a preliminary instruction to the jury to that effect (Trial Tr. at 7), the State presented all its evidence on the first information on the first day of trial (Trial Tr. at 17–53) and all its evidence on the second information on the second and third days of trial without any reference to the prior day (Trial Tr. at 54–59, 88–120, 123–51). During the course of its deliberations, the jury inquired of the court whether it had to render a verdict on each offense separately, which the court

answered in the affirmative. (Charge Tr. at 19). Moreover, the causal connection between the two offenses is even greater here than in *Leach,* for petitioner here was charged in both instances with possession of heroin in similar packaging, at the same location well-known for drug trafficking activities, a mere three days apart.

### B. CONN.GEN.STAT. § 21a–278(b)

■ Petitioner further alleges that Conn. Gen.Stat. § 21a–278(b)[6] is unconstitutional on its face and as applied in his case, as the statute improperly places the burden of establishing drug-dependency upon a criminal defendant. On the first day of trial, out of the presence of the jury, petitioner's trial counsel represented that he had a recent psychiatric evaluation which indicated that petitioner was in fact drug-dependent, but for strategic reasons, he had decided not to present such evidence to the jury. (Trial Tr. at 14–15; Petitioner's Appeal Brief, Exh. 12). He renewed his constitutional challenge to this statute by way of his motion for a new trial. (Petitioner's Appeal Brief, Exhs. 11–12; Appellate Court Record, at 8; Sentencing Tr. at 2–5).

This statute, which formerly was codified at Conn.Gen.Stat. § 19–480a(b), was addressed at great length by the Connecticut Supreme Court in *State v. Januszewski,* 182 Conn. 142, 438 A.2d 679 (1980) [*"Januszewski I"*], *cert. denied,* 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981), and by the late Judge Blumenfeld in *Januszewski v. Manson,* 525 F.Supp. 805 (D.Conn. 1981) [*"Januszewski II"*], a federal habeas decision.

In *Januszewski I,* the defendant challenged the trial court's jury charge to the effect that in the absence of any evidence of drug dependency, the jury could assume that defendant was not drug-dependent. 182 Conn. at 164–65 n. 17, 438 A.2d 679. The Connecticut Supreme Court held unequivocally:

We conclude that the defendant's status as a person who is not drug-dependent is not an essential element of the offense charged. It is not a part of the prohibit-

ed conduct, i.e., the possession of a certain quantity of a narcotic substance with intent to sell....

*Id.* at 165–66, 438 A.2d 679. The Supreme Court relied upon Conn.Gen.Stat. § 19–474 (now codified as § 21a–269), which provides: "In any complaint, information or indictment ... it shall not be necessary to negative any exception, excuse, proviso or exemption ..., and the burden of proof of any exception, excuse, proviso, or exemption shall be upon the defendant." Thus, in construing these two statutory provisions, the Connecticut Supreme Court concluded that the prosecution "bears no initial burden of proof on matters personal to the defendant and peculiarly within his own knowledge," and that a "defendant's drug dependency at the specific point of time in the past at which the offense occurred is certainly a matter personal to the defendant and peculiarly within his own knowledge." 182 Conn. at 167, 438 A.2d 679 (citations omitted). However, if the defendant does introduce "substantial evidence" tending to prove his drug dependency at the time of the offense, then Conn.Gen. Stat. § 19–474 "loses all operative effect" and the burden then rests on the prosecution, as it does in all other essential elements in the case, to prove beyond a reasonable doubt that the defendant was not entitled to the benefit of the excuse, proviso, or exemption claimed by him. *Id.* at 169, 438 A.2d 679 (citation omitted). This shifting of burdens, the Court reasoned, was neither "unusual" nor unconstitutional. *Id.* at 167–68, 438 A.2d 679, *citing Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). *See also State v. Ober,* 24 Conn.App. 347, 354–56, 588 A.2d 1080 (App.Ct.), *certif. denied,* 219 Conn. 909, 593 A.2d 134–135 (1991); *State v. Hart,* 23 Conn.App. 746, 752–56, 585 A.2d 103 (App.Ct.), *certif. granted in relevant part,* 217 Conn. 811, 587 A.2d 152 (1991); *State v. McNeil,* 21 Conn.App. 519, 574 A.2d 1314 (App.Ct.), *certif. denied,* 216 Conn. 807, 580 A.2d 64 (1990); *State v. Vaughn,* 20 Conn.App. 386, 389–90, 567 A.2d 392 (App.Ct.1989).

**6.** *See* note 4 *supra.*

The same conclusion was reached in *Januszewski II*. Judge Blumenfeld's analysis on this issue was two-fold. First, under *Januszewski I*, it was clear that the factor of drug dependency was not an element of the state's case under Conn.Gen.Stat. § 19–480a(b). 525 F.Supp. at 810–11. And second, the principles of *Patterson* were not implicated in that "petitioner was required to bear only the burden of production, *i.e.*, of going forward with evidence sufficient to raise the issue of drug dependency," while the burden of persuasion remained upon the prosecution. *Id.* at 809–10.[7]

Judge Hennessey's charge to the jury on this issue was consistent with the two *Januszewski* decisions. (Charge Tr. at 11, 15–16). There is nothing in petitioner's brief to indicate that this court should disregard the conclusion reached in *Januszewski II*, nor have there been any intervening decisions which question the continuing viability of Judge Blumenfeld's reasoning. While in the words of petitioner's counsel the statute may be "bizarre," it is not unconstitutional.

### C. CROSS–EXAMINATION REGARDING PETITIONER'S BOND

On the last day of trial, petitioner testified in his own defense; during cross-examination he was questioned briefly, over the strenuous objection of his counsel, with respect to the sources of funds he used to post his bonds following his two arrests. (Trial Tr. at 264, 282–87. *See also* Trial Tr. at 288, 289). Petitioner's final claim is that the trial court erred in allowing this cross-examination.

■ Generally, improper admission of evidence is not subject to review in a federal habeas corpus proceeding. As the court observed in *Carroll v. Hoke*, 695 F.Supp. 1435, 1438 (E.D.N.Y.1988), *aff'd mem.*, 880 F.2d 1318 (2d Cir.1989):

> ... [T]o prevail on his petition [regarding improper admission of evidence] petitioner must show that the error was so pervasive as to have denied him his con-

stitutional right to a fundamentally fair trial.... Petitioner bears a heavy burden since evidentiary errors do not generally rise to the level of a constitutional deprivation requiring the setting aside of a conviction.... Where, as here, evidence is claimed to have been erroneously *admitted*, the issue becomes "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for a conviction or to remove a reasonable doubt that would have existed on the record without it." ... Such evidence has been described as "crucial," "critical," or "highly significant."

(multiple citations omitted) (emphasis in original). The district court held that the admission of petitioner's Notice of Alibi was not an error of constitutional magnitude requiring granting of the petition for habeas corpus. *Id. See also Underwood v. Kelly*, 692 F.Supp. 146, 150–51 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989) (no constitutional violation in admission of petitioner's prior convictions); *Vargas v. Hoke*, 664 F.Supp. 808, 812 (S.D.N.Y.1987) (same conclusion with respect to admission of prior consistent statement); *Jenkins v. Bara*, 663 F.Supp. 891, 898–99 (E.D.N.Y.1987) (same conclusion with respect to admission of cocaine where petitioner questioned chain of custody).

■ The cross-examination here with respect to the posting of bonds covered little more than seven pages of the entire trial transcript. It was hardly such a "critical" or "crucial" part of the prosecution's case that reasonable doubt of petitioner's guilt would have existed without its introduction. *Carroll, supra*, 695 F.Supp. at 1438. If the introduction of the much more significant evidence at issue in *Carroll, Underwood, Vargas*, and *Jenkins* did not rise to the level of a constitutional violation, then the issue raised here surely did not either.

---

**7.** The petitioner in *Januszewski II* raised two other constitutional arguments not asserted here.

### III. CONCLUSION

For the reasons stated above, respondent's motion for summary judgment is granted, and petitioner's motion for summary judgment is denied.

*See* 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same); F.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrates, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS*, 892 F.2d 15, 16 (2d Cir.1989) (failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

Dated at New Haven, Connecticut, this 11th day of September, 1991.