**Elgin McEACHIN, Petitioner,**

**v.**

**Bert ROSS, Respondent.**

**No. 95 Civ. 5299 (DC).**

United States District Court,
S.D. New York.

Jan. 16, 1997.

Elgin McEachin, Staten Island, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York by Dian Kerr McCullough, Assistant Attorney General, New York City, for respondent.

## MEMORANDUM DECISION AND ORDER

CHIN, District Judge.

Petitioner McEachin brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court convictions for robbery and assault. For the following reasons, the petition is dismissed.

### BACKGROUND

McEachin was convicted on February 25, 1987, after a jury trial, of Robbery in the First Degree (N.Y. Penal Law § 160.15[2]) (McKinney 1988), four counts of Robbery in the Second Degree (N.Y. Penal Law § 160.10[1]) (McKinney 1988), and two counts of Assault in the Second Degree (N.Y. Penal Law § 120.05[6]) (McKinney 1987). McEachin was sentenced as a predicate violent felon to concurrent prison terms of twelve to twenty-four years for the first degree robbery count, seven to fourteen years for the second degree robbery counts, and two to four years for the assault counts. The Appellate Division affirmed McEachin's con-

viction, *People v. McEachin*, 188 A.D.2d 433, 591 N.Y.S.2d 1023 (1st Dep't 1992), and the New York Court of Appeals denied leave to appeal, *People v. McEachin*, 81 N.Y.2d 889, 597 N.Y.S.2d 950, 613 N.E.2d 982 (1993).

McEachin's convictions arose from an armed robbery at the Prince George Hotel in Manhattan on March 23, 1986. The evidence introduced at trial established that on that date, McEachin and another man, Ronald Maxwell, proceeded to the ninth floor of the hotel where they robbed a number of hotel residents. Maxwell, brandishing a revolver, ordered the residents, and a hotel security guard who stumbled upon the scene, up against a wall and instructed them to give their jewelry and money to McEachin, who promptly collected the valuables. McEachin and Maxwell then fled the hotel, stopping only long enough for McEachin, at Maxwell's direction, to retrieve from the hotel lobby the visitor's log and a file box that contained their identification.

Upon exiting the hotel, McEachin and Maxwell were spotted by the police and a chase ensued. In the course of fleeing, the perpetrators accosted a woman in the process of starting her car. McEachin ordered the woman out of her car and window and threatened her with his gun. McEachin finally pulled her out of the car, threw her to the ground and sped off in the stolen car with Maxwell. Shortly thereafter, McEachin drove the car up onto the curb, where Maxwell got out and shot at the pursuing officers. Maxwell was killed by gunfire from the police. McEachin fled the car and was later arrested trying to get past the security guard at a nearby building. The police recovered from McEachin $130.69 and several necklaces taken from a hotel resident.

## DISCUSSION

McEachin makes three claims in his habeas petition: (1) that his Fifth Amendment rights were violated and that he was prevented from testifying on his own behalf by the trial court's erroneous ruling on the admissibility of evidence of other crimes for impeachment purposes; (2) that he was denied a fair trial because the prosecutor made improper comments in her summation and shifted the burden of proof to the defense; and (3) that he was denied a fair trial because the trial judge improperly charged the jury and improperly marshalled the state's evidence in its charge.

### A. The Trial Court's Sandoval Ruling

At a pre-trial hearing on the admissibility of McEachin's prior record, the prosecution sought to introduce evidence of McEachin's prior convictions. These convictions, which all occurred in 1981, consisted of five counts of first degree robbery involving a series of fast food restaurant robberies, as well as one count of second degree robbery involving a "purse snatch" from a sixty year old woman who was physically injured in the course of the incident. (Tr. 6–8).[1] McEachin pled guilty to these offenses and received concurrent sentences. Defense counsel argued that since McEachin's co-perpetrator, Maxwell, was dead, it was essential that McEachin testify in his own defense because no one else could testify as to how McEachin came to be at the hotel with Maxwell at the time of the robbery. (Tr. 5–6).

The trial court ruled under *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), that if McEachin chose to testify, the prosecution could impeach his credibility with evidence that he had been convicted on one occasion of two felonies involving the "forcible theft of property," but they could not elicit that the convictions were for "robbery." The court further ruled that the prosecution could not cross-examine McEachin regarding the facts of the underlying first degree robbery convictions because of the similarity to the crimes charged in the instant case. (Tr. 18–19; 31–33). The trial court ruled, however, that the prosecution could cross-examine McEachin regarding the underlying facts of the "purse snatch" because that crime was "dissimilar to the instant crimes." (Tr. 25). Defense counsel then urged the trial court to adopt a "Sandoval compromise" whereby the prosecution could elicit that McEachin had previously been convicted of a felony but without any

---

1. References to the trial transcript will be cited as (Tr. __).

reference to the nature of the crime or its underlying facts. (Tr. 26–27). The trial court, however, refused the request and abided by its earlier ruling. (Tr. 32–33). McEachin did not testify at trial.

McEachin asserts that this ruling deprived him of his right to testify on his own behalf. He argues that the trial court misapplied *Sandoval* in that, in light of the death of McEachin's accomplice, it did not give proper weight to the need for McEachin's testimony in connection with the defense theory of lack of intent. McEachin also argues that the trial court did not give proper weight to the "identical" nature of McEachin's prior convictions, and thus did not properly balance the probative value of that evidence against its potentially prejudicial effect.[2]

It is well-settled that a petitioner's failure to testify at trial is fatal to any claims of constitutional deprivation arising out of a *Sandoval*-type ruling. *Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984) (dismissing direct appeal from federal conviction based on challenge to district court's ruling that a prior conviction constituted permissible evidence for limited impeachment under Fed.R.Evid. 609(a) on the grounds that defendant failed to testify at trial); *see also Peterson v. LeFevre*, 753 F.Supp. 518, 521 (S.D.N.Y.1991) (dismissing habeas petition claim based on alleged deprivation of right to testify arising from trial court's *Sandoval* ruling on the grounds that defendant failed to testify at trial), *aff'd*, 940 F.2d 649 (2d Cir.1991). The doctrine expounded in *Luce* has been held to apply to federal habeas corpus review of state court convictions. *Carrasquillo v. Kirk*, 677 F.Supp. 193, 194 (S.D.N.Y.1988).

The reason that a habeas petitioner's failure to testify at trial is "fatal to any claims arising out of a Sandoval type ruling" is that absent such testimony, a court has no "adequate non-speculative basis upon which to assess the merits of that claim." *Peterson*, 753 F.Supp. at 521 (citing *Carroll v. Hoke*,

695 F.Supp. 1435, 1439–40 (E.D.N.Y.1988), *aff'd mem.*, 880 F.2d 1318 (2d Cir.1989)); *Underwood v. Kelly*, 692 F.Supp. 146, 151 (E.D.N.Y.1988), *aff'd mem.*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *Carrasquillo v. Kirk*, 677 F.Supp. 193, 194–95 (S.D.N.Y. 1988).

Here, McEachin chose not to testify at trial. Accordingly, his petition for habeas corpus based on this ground is denied.

## B. *The Prosecution's Summation*

As his second ground for habeas corpus relief, McEachin asserts that the prosecutor in her summation deprived McEachin of a fair trial by criticizing his "right to remain silent" and by shifting the burden of proof to McEachin through numerous comments emphasizing that McEachin "put forth no defense." McEachin's second ground for habeas relief also fails.

### 1. *Prosecutorial Misconduct Standard*

A prosecutor's conduct violates due process only if it deprives the defendant of a fair trial. *Blissett v. Lefevre*, 924 F.2d 434 (2d Cir.), *cert. denied*, 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991). Thus, to obtain relief on a prosecutorial misconduct claim, a habeas petitioner must show that "the prosecutor engaged in egregious misconduct ... amount[ing] to a denial of constitutional due process." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.1990). Prosecutorial misconduct during summation is grounds for reversal only when the remarks caused "substantial prejudice" to the defendant. *Gonzalez v. Sullivan*, 934 F.2d 419 (2nd Cir.1991) (citing *United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 1082, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990)); *United States v. Nersesian*, 824 F.2d 1294, 1327 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). In conducting such a review, relevant factors include "the severity of the misconduct, the

---

**2.** In connection with this ruling, the Court notes that the trial court limited the scope of the examination regarding McEachin's prior convictions by restricting the prosecution to establishing that McEachin had previously been convicted of

"forcible theft," and not "robbery." Furthermore, the trial court also limited the prejudice to McEachin by limiting the prosecution to inquiring about only two of the five prior fast food restaurant robberies.

measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *United States v. Friedman,* 909 F.2d 705, 709 (2d Cir.1990); *see also United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). Applying the foregoing standard, the Court finds that there was no prosecutorial misconduct.

### 2. *McEachin's Allegations of Prosecutorial Misconduct*

McEachin claims that the prosecutor "criticized" his right to remain silent, including by commenting that "[n]o person can look into the mind of the defendant." (*See* Tr. 624–25). McEachin also claims that the prosecutor commented numerous times that McEachin "put forth no defense." (*See* Tr. 614–18). McEachin claims that the effect of the prosecutor's alleged misconduct was to shift the burden of proof to McEachin.

The prosecutor's comments must be assessed in light of the defense summation. Where a prosecution comment is a rejoinder to defense counsel's comments, that factor ameliorates the effect of an objectionable prosecution comment upon the fairness of a trial. *United States v. Tutino,* 883 F.2d 1125, 1131 (2d Cir.1989) (impermissible references in prosecution summation to information not in evidence held not to deprive defendant of a fair trial, in part because the remarks were made in response to defense contentions), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *see also Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471–72, 91 L.Ed.2d 144 (1986) (several improper comments in prosecution summation held not to deprive defendant of fair trial because invited by defense summation).

Here, defense counsel's theory throughout the trial, and in his summation, was that McEachin was not Maxwell's accomplice and that McEachin had no intent to participate in the hotel robbery or commit any of the charged offenses. Defense counsel claimed that McEachin was "caught up in a thing

going down before his eyes" and was too stunned or afraid of Maxwell and his gun to act otherwise. (Tr. 579, 582–90). In response to these contentions, the prosecutor emphasized to the jury that since it is impossible to determine a person's intent by reading his mind, intent must be determined by examining a person's actions. (Tr. 624–25, 627). The prosecutor reviewed the conduct by McEachin that she argued established his intent: he had grabbed the box containing his and Maxwell's identification cards from the hotel lobby; he had fled with Maxwell and away from the police; and he had accosted the driver of the car, threw her to the ground, and drove away in the stolen car with Maxwell. (Tr. 613–14; 622–25). The prosecutor concluded that there was "nothing based on the evidence that establishes [that petitioner] was anything but a participant in this crime, and that he intentionally robbed a number of people." (Tr. 625).

In light of defense counsel's argument, these comments were entirely proper. *See Orr v. Schaeffer,* 460 F.Supp. 964, 967 (S.D.N.Y.1978) (upholding prosecution's right to interject his view of the facts to rebut a defense argument); *see also Tutino,* 883 F.2d at 1131; *Darden,* 477 U.S. at 181, 106 S.Ct. at 2471–72. Moreover, it is clear that the prosecution's comments were a response to the defense claim of lack of intent and not an attempt to improperly comment on McEachin's failure to testify at trial.[3] Nor was it improper for the prosecution to point out the lack of evidence to support the defense's theory. There is no indication that such comments tended to shift the burden of proof to McEachin.

In addition, the trial court's charge mitigated any adverse impact the prosecutor's comments may have had. The trial court specifically told the jury that no adverse inference could be drawn from McEachin's decision not to testify. (Tr. 657). The trial court repeatedly instructed the jury that the prosecution had the burden of proving each element of a crime, including McEachin's intent to rob and act in concert with Maxwell,

---

3. The Court also notes that there is no evidence to suggest that any alleged misconduct was intentional. *See United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

beyond a reasonable doubt. (Tr. 646–47, 663–64, 666–67). The trial court made it clear that the defense was under no obligation to come forward with any evidence and that the burden of proof always remained squarely on the prosecution. (Tr. 646–47, 657). Finally, the trial court instructed the jury that the summations were not evidence and that the jury was the sole judge of the facts. (Tr. 653). In view of the trial court's charge, McEachin suffered no prejudice from any allegedly improper comments made by the prosecution.

Additionally, even if any of the prosecutor's comments had exceeded the bounds of a fair prosecutorial summation, the evidence of McEachin's guilt was overwhelming. In light of the compelling testimony of several eyewitnesses as well as police officers, and the stolen property found in McEachin's possession, McEachin's conviction—even absent the alleged improprieties—was certain. *See Gonzalez,* 934 F.2d at 424; *Modica,* 663 F.2d at 1181. Given the court's charge and the strength of the evidence against McEachin, the prosecutor's summation, even if improper, did not render the trial fundamentally unfair. Accordingly, McEachin's second ground for habeas relief is rejected.

## C. *The Trial Court's Jury Charge*

McEachin asserts as his final ground for habeas relief that the trial court's charge to the jury deprived him of a fair trial. Specifically, McEachin claims that although the trial court "obliged defense Counsel[']s request to charge the law of duress to the jury," the trial court instructed the jury " 'not to use the duress theory in [its] deliberations,' because the defense was not relying on it." (*See* Tr. 655–56). Additionally, McEachin claims that in its charge to the jury, the trial court marshalled the state's evidence by commenting negatively on defense counsel's opening statement.

### 1. *The Legal Standard For Review Of State Law Claims*

Mere questions of state law are not grounds for federal habeas relief. *Es-*

*telle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990) ("Federal habeas corpus relief does not lie for errors of state law."). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (per curiam). Errors in state jury charges are questions of state law and are therefore not reviewable on federal habeas corpus absent a showing that the jury charge deprived the defendant of a federal constitutional right. *See Blazic v. Henderson,* 900 F.2d 534, 540 (2d Cir.1990); *United States ex rel. Stanbridge v. Zelker,* 514 F.2d 45, 50 (2d Cir. 1975).

The standard of review of state jury instructions in a habeas petition is "not whether 'the instruction is undesirable, erroneous or even universally condemned [but whether] the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Wright v. Smith,* 569 F.2d 1188, 1191 (2d Cir.1978) (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1970)); *see also Blazic,* 900 F.2d at 541.

### 2. *McEachin's Allegations Of Error In The Trial Court's Charge*

Here, the trial court's charge to the jury regarding the affirmative defense of duress was proper. Prior to trial, defense counsel represented to the trial court that McEachin would not rely on the affirmative defense of duress, and would not request a charge on that defense; rather, the defense would simply argue that there was insufficient proof of McEachin's culpable intent. (Tr. 21).[4] At the same time, however, defense counsel claimed that McEachin was "forced into going along" with Maxwell. (Tr. 4). The trial court cautioned defense counsel that arguments along those lines risked rais-

---

**4.** The trial court indicated that if defense counsel asserted the affirmative defense of duress, then the court would entertain an application from the prosecution, presumably for some greater leeway in presenting McEachin's prior criminal record. (Tr. 21–24).

ing the duress defense, which would require the court to instruct the jury on the defense of duress. (Tr. 21–23).

Despite the trial court's admonition, defense counsel in his summation compared McEachin's reaction to Maxwell to that of the security guard who happened upon the robbery: the guard was "shocked," "frightened for his life," and "not in control of his faculties," and McEachin "may not have been in control of his faculties either." (Tr. 583–85). Defense counsel rhetorically asked "why are we demanding so much more from Mr. McEachin than from the security guard." (Tr. 583). The trial court concluded that defense counsel's argument that McEachin had not voluntarily gone along with Maxwell, but had acted out of fear, alluded to a duress defense. Consequently, the trial court explained to the jury the nature of a duress defense, and instructed the jury that McEachin was not invoking such a defense and thus the jury was not to consider it. (Tr. 655–56). The trial court's instruction to the jury served to clarify that, despite defense counsel's suggestions otherwise, McEachin was not relying on a duress defense, as counsel had stated prior to trial. I find that there was no error in so instructing the jury, much less an error of constitutional magnitude.

 McEachin also argues that the trial court marshalled the evidence and commented negatively on defense counsel's summation. Considering the challenged portion of the charge "in the context of the overall charge," the trial court's instructions were fair. *Justice v. Hoke,* 45 F.3d 33, 34 (2d Cir.1995) (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973)); *see also Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). While the trial court referred to some of the evidence in the case in explaining to the jury how to go about its task of applying the law to the facts, the court made it clear that it was the province of the jury to weigh the evidence (Tr. 647, 650, 652, 654, 660), and not the role of the attorneys (Tr. 652) or the court (Tr. 652). The trial court explained to the jury that it was required to afford McEachin the presumption of innocence (Tr. 646), and it ex-

plained several times that the prosecution had the burden of proving McEachin's guilt as to each element of the charged offenses beyond a reasonable doubt. (Tr. 646–47, 648). Finally, the trial court acceded to a request by defense counsel to supplement its charge by instructing the jury as follows:

> Just so it's perfectly clear, I want to make certain that the jury understands that I have no opinions or views about the evidence in this case. I've not expressed any view. I don't believe I intimated any view but to the extent that you may glean something from my remarks; that is inappropriate. I have no view about the evidence in this case. The determination of the evidence in this case, and findings of fact are solely within the jury's province, and nobody else's.

(Tr. 695). Viewed as a whole, the trial court's jury charge was proper and did not deprive McEachin of a fair trial. Accordingly, McEachin's third and final ground for habeas relief is also rejected.

**D. *Certificate Of Appealability***

As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. *See also Rodriquez v. Scully,* 905 F.2d 24 (2d Cir.1990) (per curiam) (discussing certificate of probable cause under standard prior to amendment of § 2253); *Alexander v. Harris,* 595 F.2d 87, 90–91 (2d Cir.1979). This Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

### CONCLUSION

For the reasons set forth above, McEachin's application for a writ of habeas corpus is denied. The petition is dismissed and a certificate of appealability will not issue.

SO ORDERED.